Case for argument is National Labor Relations Board v. Enterprise Leasing. Mr. Sauer, when you're ready. Thank you, Your Honor, and may it please the Court. John Sauer, appearing on behalf of Enterprise Leasing Company Southeast. I'll address the jurisdictional issue in this case, and then my colleague, Mr. Beegin, is available to address the merits-related issues. Yes, Your Honor. Let me try to clear up something. Both Enterprise Leasing and Huntington are relying on the Lundy Packing case. That's correct, Your Honor. I think that is distinguishable, and I'm going to tell you why I think it is. On its face, it is distinguishable. In Lundy, we denied enforceability based on the rejection of the Board's unfair labor practice findings entered by a properly constituted board. Do you understand that? Yes, Your Honor. All right. In your case, and in the case of Huntington, by contrast, we denied enforceability because the Board's order was issued by officials we found to have been improperly appointed. Now, the distinction makes all the difference, it does to me. A judicial determination that an order had not been issued by a properly constituted board or tribunal means that the merits of the case have yet to be authoritatively decided. That's exactly how the Board construed our mandate, and that's exactly why the Board took jurisdiction to go back and review those cases. That is the Board's position in this case, Your Honor. I agree. I believe that position is incorrect based on three sources of law. The first source of law that we rely on is the actual text of the Act, and the text of the Act says that once the record is transferred to the Court of Appeals, the Court of Appeals has exclusive jurisdiction over the full matter, and its judgment shall be final. So when this Court issued a prior mandate that stated enforcement denied, and did not include any language in the prior opinion implying that a mandate should occur, that, in the language of the Lundy-Packing case, indicated that the case is closed in all respects. Well, we certainly anticipated and expected that the Board would revisit that case. Are you familiar with the Whitesell Corporation case? I am, Your Honor. All right. There, they said, we have yet to determine whether Whitesell violated the NLRA. Our prior denial comes without, well, does not preclude the Board now properly constituted from considering this matter and issuing its first valid decision. As the Second Circuit acknowledged in Don't See Trading, we expected that the Board would visit the merits of the case again, and that's exactly what we expected when we issued our mandate. Your Honor, with respect to that, I would address the Court's attention to the Donnelly-Garment case from the Supreme Court in 1947. The Donnelly-Garment case makes very clear that the issue before this Court is a question of not what the panel expected when it wrote those words, enforcement denied, but what the objective meaning of those words is. So the prior opinion in this case in Enterprise 1 and in Huntington Hills 1 simply says enforcement denied. And in the words of Justice Frankfurter in the Donnelly-Garment case, Do you think this current Supreme Court is really high on the objective meaning of words? Your Honor, I think there's a spectrum of views in the current Supreme Court on that particular issue. You don't think it's the same as it was in 1947, do you? I think it's a more strongly textualist court now than it was in 1947. Thank you for reading all the opinions out of that court. But at any rate, but your argument, based on my follow-up to Judge Hamilton's question, your argument is that there isn't all the statute and the context of the statute and that Lundy decision, isn't that all premised on there won't be a revisitation of a merits determination that has been considered? I mean, the merits determination has to come at some point for the system to work, doesn't it? Your Honor, I'd say two things with respect to that. One is a sort of legal question and one is sort of factual. On the legal question, just adverting to what you just mentioned about the current Supreme Court, the current Supreme Court decided the FCC against City of Arlington, Texas case two years ago. And in that case, the court clearly said there really is no such distinction between a sort of jurisdictional issue and a merits issue when it comes to the actual review of agency decisions. That distinction can be drawn when it comes to the review of district court decisions, but there is no distinction. I know that, but this whole setup, this whole mechanism, it presupposes some kind of merit determination. Don't you think? Hasn't it been your experience? Isn't that what the world is, is a merit determination? Once there's a merit determination by the board and once the courts have passed on the merits determination, then that merit determination stands. That distinction between merits determinations and non-merits determinations is nowhere found in the text of the act. Maybe we'll start from there. Well, I will say the one place it is found is in the Whitesell case. The Whitesell case said our decision on the penal constitution issue, which is a new process steel issue, is final. But then it said our prior decision is only final with respect to that particular issue. And other issues, merits-related issues that we haven't yet decided, are open for reconsideration in the future. So if you were in a case below when you wanted the agency and you won, your side won. It's hypothetical. Your side won. And there was some claim of ultra vires action or something that they did that's brought to the court and the court goes, They couldn't even act on that case because they didn't have the hearing within 24 hours of the announced date. You would argue that's correct, Your Honor, but they can't go back and enforce the merits determination that we won on? It would depend on what the language of the court's mandate was, which is an objective question. The mandate in this case reads enforcement denied. Enforcement denied cannot plausibly be read to mean remanded with instructions for further consideration. So your argument rests on Lundy or your argument rests on the mandate language in this case? Both of those because Lundy was a mandate interpretation case. And there's another fact. No, but I'm asking, does yours rest on the objective determination of what was said in the mandate of this case? Correct. You don't need Lundy then, do you? Well, Lundy is very instructive on how that mandate should be interpreted. I said, do you need it? I don't know that we do need it, Judge. I think that this court could say. I think under your argument you would argue that you don't need it. I agree. I think that enforcement denied means enforcement denied. But I would point out that Lundy and the other cases we've cited all point out the principle in specific. No, I didn't ask you if you thought it was helpful or not. Right. Because you clearly do. Yes, I believe it. But you actually under the objective reading theory, which I think is a bad theory generally, but you don't need that. You just think it's helpful to say what else the court has done. And there's no other court case that would say we couldn't do it in this context. That's what your argument would be, wouldn't it? You would say, objectively, I win, and there's no other case law that would bind this panel to say otherwise. I certainly would say that, Your Honor. And then I would add that it's helpful for the reasons that are discussed in our brief. One of those reasons I would point out, there's something, there's a unique factor in this particular case, which was also present in the Lundy case, also present in the W.L. Miller case from the Eighth Circuit, which is that the board in this particular case, unlike the vast, as far as I can tell, the vast majority of the other cases, never asked for remand as an alternative disposition. So this panel, yes, Your Honor. I think you may be overlooking this fact. Excuse me.  That would simply prolong it. You understand what I'm saying? I do understand the point you're making, Your Honor. I know that the court has not done that so far. I believe that that would be an extraordinary action for the court to take, having already denied the petition for rehearing that's already been filed in this case. So my understanding is that once the mandate issues, prior panel opinion in Enterprise One is completely terminated. So they would have to, the board would have to move to kind of reopen the prior case in order for that to occur. And I don't know if there's any legal authority for that. I don't agree with you. Exceptional circumstances can exist for recalling the mandate. And in this case, those exceptional circumstances are that no authoritative board has ruled on both of these cases, both Enterprise and Huntington. No authoritative board has ruled on the cases. So what would you have that just let the status quo stand? I would do that, Your Honor. And maybe this may address your concern about exceptional circumstances. In this particular case, there is an exceptional circumstance that cuts the other way. That circumstance is unlike the vast majority of other cases. In this particular case, the board never asked for remand as an alternative remedy when it was briefing and arguing Enterprise One. So under very clear appellate waiver rules, the board waived its right to ask for a remand. But that's not really an answer to the question. If we decided under looking at the law ourselves and our rules that exceptional circumstances exist, which, by the way, I would say was what I was addressing with the question of all this is premised on, somehow there's been a merit determination when you look at these other cases. It's not just to be left in limbo. There's been a merit determination, and that may be why it's different. But if, in fact, we feel we have the authority to recall the mandate and issue the remand, then under those circumstances you wouldn't be happy with the results maybe, but you would not say that there was any flaw in our process at that point. I would urge the court not to sue. I didn't ask you that. I know you don't want us to do it, but I said if we did it, then that would solve your argument, wouldn't it? I take your pause to mean yes. I don't want to concede that point, Your Honor. You don't have to. But in fact is, do you want to argue with the fact that when I say it appears that would – I'm not saying we have to do that, but if we were to do that, you could argue against it, it's not good law, we shouldn't do it and all that, but if we decided to exercise our authority in that way, then you really wouldn't take too much time arguing that we couldn't do that. I see my time has expired. Let me tell you, do you have any time left? I reserved some minutes for Mr. Beeson to address the matter. All right. I'll come back and address it. Thank you very much. Thank you. Thank you very much. Is it Beeson? All right. Glad to hear from you. May it please the Court, my name is Dan Beeson and I have the pleasure of representing Enterprise Southeast on this matter. And as Mr. Sauer indicated, Your Honor, I'll address the merits of this case. With respect to the merits, there are two premises I want to outline at the outset. First of all, we believe the essential facts are set forth in the record before the hearing officer in a hearing that was conducted back in February of 2011 and the hearing officer's report are fully supportive of our position with respect to three objections, and we'll get to those. The second thing we have to remember is that the election that was conducted in December of 2010, there were approximately 102 eligible voters, 44 voted for the union, 41 voted against the union, and there were two challenged ballots. In short, it was a razor-thin election, and there were 12 eligible voters who did not vote in that particular election, and those would have been determinative. Maybe they didn't want to vote. That could be, Your Honor. But the fact of the matter is that that does get us to the first objection I'd like to address, and I'm glad you led me to that. And that objection is that, and the record illustrated this before the hearing officer, on the dates in question, December 16th and 17th of 2010, there was severe weather in the Raleigh-Durham area. There was freezing rain. It was so bad you closed down your business. Didn't he operate that day, did you? We did operate that day, Your Honor. You're correct on that factually, but that's not the determinative factor. And, in fact, the Labor Board has held in prior cases that the determinative factors are whether there was severe weather and, if so, whether a determinative number of employees did not. Let me say, when I asked that question about you not working, I asked that to you to get a response, because I know you did stay open and you did work that day, did you? We did, and I thought I'd answer that question, Your Honor. I apologize if I didn't. I wasn't trying to avoid it. Yes, Your Honor. I don't know why you would want to go there, because in the prior panel opinion, we addressed all of these issues very painstakingly. We did so because we wanted the panel or the board to have our views as to what we felt about the merits of this case. And, in detail, we presented that in the prior panel opinion. Yes, you did, Your Honor, in all candor. There was some discussion, and I recall you asking me questions in the prior case about whether we should have had evidence or not had evidence as to why certain people did not attend or participate in the election. In the board cases, in particular, VIP limousine indicates that we're not supposed to. Well, you're wasting your time re-arguing that to me, to this panel, because you haven't taken any challenges to our prior panel opinion. But yet you're back up here again. We did take challenges to your panel opinion, Your Honor. The board, in their October 2, 2014 decision, indicated that this case was begun anew because, essentially, it was being held in repose. And now, if it's being held and being addressed anew, we should have the opportunity to address those issues. Well, if you want to argue about the weather in Raleigh, North Carolina at that time, I simply would tell you that the record doesn't support any of your claims. I appreciate your position, Your Honor. Applying VIP limousine, the weather was severe, and a determinative number of people did not vote in that election. And based on that, board law is that that's sufficient to conduct a rerun election. You want to go back and conduct an election, or do you want to conduct one now because the composition of the group may have changed? You can't do that. You've got to live with what was decided back in that election, not what you'd like to revisit today. At this point, we can't reconduct that election. What the board is doing is seeking to enforce a ULP. And our point of view is that there can't be any obligation to bargain where there wasn't a properly conducted election. And that's the problem here. There wasn't an election that was appropriate for three separate reasons. One of them was the weather. I know I've gone beyond my time. I know I've been instructed to stop. We had two other issues on that merits issue. Don't feel alone. It frequently happens that you don't get to say everything you want to. Thank you. If you don't have anything else, I'm going to move to the next attorney. That's fine. Okay. All right. Thank you. Ms. Beard. Good morning. I'm Heather Beard, and I represent the National Labor Relations Board. I will be addressing the threshold issue of the board deciding the case anew. And then for the last five minutes of our 20 minutes, Mr. Seid, my colleague, will address the merits of the unfair labor practice allegations. So the threshold issue in this case. Do we have to recall our mandate for you to win? No, Your Honor. How do we do it otherwise, in your opinion? Okay. The board's position, as Judge Hamilton was stating, is that this particular mandate, when read the way that mandates are read, construing them reasonably in light of the judgment and the opinion, is that the mandate as it stands allows the board to go back and decide the case anew because there has not been a valid board decision on the merits yet. And so construing the mandate in light of the judgment, which clearly states that the reason enforcement was denied in this case was for the sole basis of the constitutional recess appointment issue. Because that was the only basis for the denial of enforcement, the board's position is that the mandate then allows the board to go back and decide the case anew. And that's exactly what the board did here. And when you read the mandate, we're not reading the mandate as the Lubrizol v. Exxon case shows, in a vacuum or in isolation, the mandate enforcement denied is read in the context of both the judgment and the opinion. And so we believe that when you look at the judgment and opinion, the board... But that's all that the board asked for, for the order to be enforced. You didn't ask for the alternative of a remand. That is correct. Doesn't that make all the difference? We believe it doesn't make all the difference, Your Honor, for a few reasons. The first reason is that the board a lot goes in front of these courts and brings cases. And a lot of times, even without asking if we lose, we want a remand, the courts retain the equitable discretion to grant remands. And so we did not in this case ask for a remand with regard to the unfair labor practice issue. If losing on the recess appointment issue, that is correct. But that is not necessary. Did you ask for it in the petition for rehearing? Yes. And the petition for rehearing was denied? The petition for rehearing was denied without any comment, yes. And we would argue that the case law on that is pretty clear, that when there is a summary denial of a petition for rehearing, that that does not answer whether or not it was denied on the merits. And indeed, in the petition for rehearing, we set forth the position that we believe we don't need to have an actual explicit remand from the court for the board to go back and decide the case anew. And in that petition for rehearing, we set forth those reasons construing the mandate that we have from this court, as well as relying upon the white cell decision from the Eighth Circuit, which is the closest case that we have to what we have here, when there is a decision from a court based on a quorum issue problem with the board that does not decide the merits authoritatively. And so reading the mandate reasonably in conjunction with those principles. Is it your argument that you do, in fact, read the mandate objectively, but part of reading it objectively is reading it within the context of the opinion? Yes, Your Honor, that is correct. And we also believe that is the teaching of the Lubrizol v. Exxon case. And that is why the board went and took this case anew. Once the mandate issued from the court in relinquished jurisdiction, the board was able to go back and, with a properly constituted board, make a decision on the merits of the case. And so our position is that we do not need to have this court go back and get rid of the old mandate. We believe that the mandate is sufficient as it stands. And we also, as we point out in our brief, one of the things in reading mandates is the equitable principle. And the equitable principle would show that after new process, which was another quorum issue that was decided by the Supreme Court, and after Noel Canning, every other court that has examined cases that were not decided on the merits by a circuit court has allowed the board to go back and take a look at the merits anew. And that would be the exact same thing that we're asking to happen here in the Enterprise and later in the Huntington cases. You are, I'm sure, familiar with the Whitesell case and also the Doomsday Trading Company case? Yes, Your Honor. All right. Well, just as in those cases, we expected, when we issued our mandate, that the board would go back and revisit these cases. Yes, Your Honor. And that's our understanding as well. And that's why the board did that. And it's clearly permissible under Whitesell, which is an Eighth Circuit decision, and the Doomsday case, which is cited in that. That's correct. We fully expected and anticipated that the board would go back and revisit this case. A duly constituted board would go back and revisit these cases. Thank you, Your Honor. That is exactly what the board did do. I'm glad that the board fulfilled that. And the brief that we submitted makes clear why Whitesell is good law and why the mandate construed properly allowed the board to do what it did. And I see I have a bunch more time. I'm more than happy to continue. Unless you all have any further questions, I can leave the merits to my colleague. No further questions. Thank you very much. Thank you. Is it Mr. Saad? Mr. Saad? Saad, hear from you. Good morning, Your Honor. David Saad for the Labor Board. Addressing the merits, I just wanted to touch on one point that Enterprise Council raised. With respect to weather conditions, the test isn't simply Let me ask you this much. Judge Hamilton just asked, do you want to talk about the merits here? Your Honor, unless this court has any questions, I'm perfectly content to simply ask that the court enforce the board's order. Judge Hamilton, do you have any questions on the merits here from the board? No, not really. I would point out that in our prior opinion, we did vacate the board's decision. And so that matter has not been authoritatively addressed by the board. Your Honor, in the opinion that's now before this court, the board did authoritatively address the issues that are before it. And the facts didn't change at all, did they? That is correct. There's no change in facts. So you're saying they were vacated, the factual determinations were vacated, but you've gone back in your process, which is being challenged, but in that process you have, in fact, made those factual findings again. Your Honor, the board's ultimate determination, that has been made again. Let me do this. You came all the way. I'm going to give you a minute, say whatever you want to say. You started to talk about the snowstorm in Raleigh, I think. That's fine. I was just going to address that the test wasn't simply that there might have been bad weather or that a determinative number didn't vote, but actually evidence that people were prevented or precluded from voting. And that's the only point I wanted to raise. Well, I'm glad you joined us this morning to make that point. Thank you very much. Thank you. And, Mr. Sauer, I think that leads us back to you. If you care to say anything else. Thank you, Your Honor. I will trespass on the Court's charity by returning to the question that you left me with, which had to do with this Court's, whether it would be a proper exercise of this Court's inherent authority to withdraw the Enterprise One mandate and amend it. No, I didn't say that. I said if we did it, wouldn't that address your concerns? If we found we had the authority to do it, wouldn't that address your procedural issue, which is your real issue in this case? Correct, Your Honor. I believe it would. And I would just like to ask the Court not to do that for at least two reasons. Number one is I believe it would be an extraordinary step for the reasons that Judge Thacker was indicating in her questions to my colleague, which is that there was a clear appellate waiver in this particular case. This case is, it may be unique, it's certainly unusual in the sense that the Board, which is a highly sophisticated litigant who had been down this road two years before after New Process Steel, was aware of this issue of remanding for whatever reason, either strategic or inadvertent, never asked for a remand at any time prior to July 17, 2013, when this Court entered its judgment saying enforcement denied. We actually pointed this out in our reply brief in Enterprise One. We said, look, they've never asked for a remand. You know, waiver here, as much as it sounds, isn't a hard and fast rule. You know, the Court looks at the question of waiver to decide it. The other side's on fair notice. And so it's not, as much sometimes as I would like for it to be a hard and fast rule, it's not that. The Court decides whether or not somebody's issued based on a number of factors, as I'm sure you know. Yeah, that is true, Judge Sheppard. I believe all those factors here would cut in favor of enforcing the Court's waiver. And one of those factors is, in fact, that we're dealing with a sophisticated litigant who may well have done this for strategic reasons. You know, you could see an appellate attorney saying, look, I don't want to ask for remand as an alternative disposition if we were to lose on the panel the Noel Canning panel constitution issue because that might signal to the Court that we're not confident in our position on it. We don't know, and in fact, I think it's probably irrelevant, what the reasons were for them to waive that. But in NLRA cases, this Court and other courts of appeals and the Supreme Court have treated that as a critical fact. Lundy Packing said, at no point did the Board ever ask for remand as an alternative disposition to consider a merits-related issue. And in fact, if we were to say waiver, to say you were right on this very important procedural point, where does that leave your client? At that point, then, I believe there would be – You win everything you want to win. Well, I believe the union could then very quickly file another petition and we'd have another election and go forth. But as for where you are at this, the moment after the decision came down, it would be what you would call a grand slam, wouldn't it? I believe it would be a legally correct and an equitably appropriate result because, you know, as this – Let me ask you, in everyday terminology, is that called a grand slam? I would say it's at least a single, Your Honor. Your clients might think it's more than that. And I suspect when you report it back to your clients, you wouldn't say, I dribbled a ball up the first baseline. I think you might say, I knocked it out of the ballpark, probably. It would, in fact, though, I'm sort of having a little fun with you, but it would give you on the merits everything you could possibly hope for. It would be taking you back to where you were before any of this started. Yes, and I would point out to your – You may think you're entitled to that. I believe we are, both legally. I think our legal position is correct that it's an objective determination of the mandate, and the mandate can only be read. You said you had a second point. I've been pressing you on the first point. I thought you said you thought that you wouldn't want it to go back there for two reasons. I don't want to interrupt, Jack. I apologize, Your Honor. I may have lost the thread of that. I believe what you're referring to is you had asked specifically should we recall the mandate. I believe my second point was I'm not aware of any authority, and the Board has certainly cited them and hasn't even requested that in this particular appeal as an alternative way to get what they want, which is enforcement of this particular order. So I believe it would be an extraordinary step for that reason as well. It would be extraordinary because it would involve a sua sponte cure of a clear appellate waiver. You know, this may well be a case of unintended consequences. Someone took the action to constitute the Board for the Board to take action in an unconstitutional way, and here we are much later trying to figure out, you know, how that all dribbles down. That is correct. Because it's first on an intentional action of somebody doing something that really, compared to this panel, to the panel at the Fourth Circuit and to the Supreme Court, unconstitutional action. We're now left in the wake of that trying to make sure that everybody is treated fairly, but according to the decision's determination the Court's already made in the case. That is correct, Your Honor. And maybe I can just leave the Court with this, which is a quotation from then-Judge, now Justice Kennedy's opinion in the SEIU case. He said in the specific context of appellate mandates under the NLRA, there must be either an order of remand or some express qualification in the judgment contemplating future proceedings for the meaning of that mandate to be that the Board may continue and resume jurisdiction. That is the meaning of the exclusive jurisdiction provision in Section 10E of the Act, and we respectfully request that. I'm sorry, Your Honor. I would suggest to you that it's in the discretion of this Court as to whether we would recall the mandate and remand it to the Board. The Board has no say-so in it, neither do any of the parties. It's totally in the discretion of this Court. My time has expired. May I address, Judge? You don't have to address it too much because it is in the discretion of the Court, but I'll give you some time. I believe it is, and all I would say to that is we'd ask the Court not to exercise its discretion that way for the two reasons I've stated. The Board hasn't asked for it, and secondly, it would be a curing of a waiver of something that a litigant did in Enterprise One. Does it bother you at all that this case has not been authoritatively decided and would not be authoritatively decided if we did nothing? May I respond? Yes, Your Honor. I would say no, it does not bother me, and the reason is it is extremely common in all of these cases where the courts have said, look, proceedings are terminated, that there was a merits issue out there that had been left undecided and that could cause great inequities. I would direct the Court's attention to the Eagle Pitcher case. In the Eagle Pitcher case, there were 209 mining employees that had been wrongfully terminated. They were reinstated with back pay. They were granted $5,400 as their back pay award, and then the Board realized, oh, we've miscalculated that. But isn't it true that one reason it wouldn't bother you is it certainly wouldn't bother your client because your clients would win hands down across the Board? Well, I mean, I believe our client would probably deal with a subsequent petition for election. No, but that's at any time other than some time restraints on new elections, you know, follow-up election. But it wouldn't bother you because you would say you won on what some people might call technicality. I know you're not calling it that, but you would win. No merits determination. But with no merit determination in this case, your client wins, right? Yes, absolutely. I'm here to ask that my client would prevail. Thank you, Your Honor. Thank you very much. We'll step down and greet counsel and go directly to the next argument.
judges: Dennis W. Shedd, Stephanie D. Thacker, Clyde H. Hamilton